1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10
11
12

JON CAZARES,

            Plaintiff,

13

v.

14
15

CITY OF EL CENTRO, a public entity;
BRIAN JOHNSON, as Chief of the El
Centro Police Department; and DOES 1-
10, inclusive,

16
17

            Defendant.

Case No.:  3:20-cv-01571-BEN-RBM

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS**

**[ECF Nos. 14, 15, 16]**

18

## I.    **INTRODUCTION**

19

Plaintiff Jon Cazares ("Plaintiff") brings this action for discrimination in violation

20

of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§

21

4301, *et seq.* ("USERRA") and California's Fair Employment and Housing Act, CAL.

22

GOV'T. CODE §§ 12940, *et seq.* ("FEHA") against Defendants City of El Centro, a public

23

entity, and Brian Johnson, Chief of the El Centro Police Department ("Chief Johnson")

24

(collectively, "Defendants").  ECF No. 1.

25

Before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended

26

Complaint ("FAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the

27

"Motion").  ECF No. 14.  Plaintiff opposed.  ECF No. 15.  Defendants replied.  ECF No.

28

16.

The Motion was submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure.  ECF No. 17. After considering the papers submitted, supporting documentation, and applicable law, the Court **GRANTS** Defendants' Motion and dismisses this case.

## II.    BACKGROUND

### A.    Statement of Facts[1]

From June 2012 through November 17, 2016, Plaintiff was a member of the United States Marine Corps.  FAC at 4, ¶ 12; *see also* Mot. at 15[2]:3-4; Oppo. at 6:7-9.  Around 2015, just prior to Plaintiff's second deployment, Plaintiff injured his back.  FAC at 4, ¶ 13.  However, the injury did not prevent his deployment.  *Id.*  In 2016, Plaintiff damaged his rotator cuff and has experienced pain and discomfort ever since.  *Id.*  Also in 2016, Plaintiff was diagnosed with depressive disorder and insomnia.  *Id*. at 4, ¶ 14.  Plaintiff alleges these injuries make major life activities difficult.  *Id.* at 4, ¶ 13.

Sometime between 2018 and 2019, while a member of the inactive reserves, and despite his back and shoulder injuries, Plaintiff joined and completed the police academy, although he alleges his pain made this difficult.  FAC at 4, ¶ 15.

Around June 2019, and while still a member of the reserves and shortly after finishing the police academy, Plaintiff was hired by the City of El Centro as a probationary police officer with the El Centro Police Department ("ECPD").  FAC at 5, ¶¶ 15-16. Plaintiff alleges that "from the outset of the hiring process," Defendants knew he had a history of mental/psychological and physical conditions.  FAC at 5, ¶ 16.  He pleads that during the background and medical evaluation process, he was honest and forthcoming about the disabilities he had suffered as a result of his military service, "none of which

---

[1]     The majority of the facts set forth are taken from the operative complaint, and for purposes of ruling on Defendants' Motion, the Court assumes the truth of the allegations pled and liberally construes all allegations in favor of the non-moving party.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

[2]     Unless otherwise indicated, all page number references are to the ECF generated page number contained in the header of each ECF-filed document.

would prevent [him] from performing the essential functions of a police officer, with or potentially without reasonable accommodation." FAC at 5, ¶ 16.

After the ECPD hires a new police officer, the officer is subjected to a one-year probationary period during which they are evaluated and trained. FAC at 5, ¶ 18. Around July 2019, Plaintiff started the first phase of this program, which included a 17-week Field Training Officer ("FTO") program, during which the probationary officer is assigned to patrol alongside a FTO. *Id.* at 5-6, ¶ 18. Also in July 2019, after serving honorably, Plaintiff's service in the inactive reserves ended for reasons not pled. *Id.* at 4, ¶ 12.

In October 2019, the ECPD gave Plaintiff a solo patrol assignment and a positive monthly review for his work. FAC at 6, ¶¶ 19-20. In Plaintiff's first review, Sergeant John Seamen ("Sergeant Seamen") indicated Plaintiff "performed at an acceptable level"[3] and confirmed there had been no issues with his performance. *Id.* at 6, ¶ 20.

Plaintiff pleads, and Defendants agree, that the essential functions of Plaintiff's position **required him to** (1) sit and stand for extended periods of time and (2) engage in vigorous physical activity, including but not limited to running and physically subduing suspects. Reply at 4:22-25 (quoting FAC at 7 ¶ 23, 8, ¶ 28). Plaintiff pleads that his "back disability caused him significant pain and made these and other essential tasks more difficult." FAC at 7, ¶ 23. He alleges that "[w]hen sitting in his patrol car for a prolonged period, [he] would experience pain in his back that would **require him to** get out of his car and **stand** before he could return to the vehicle." *Id.* (emphasis added). "Conversely, if standing for too long as part of his job, the pain in Plaintiff's back would increase until **he was required to sit**." *Id.* at 7-8, ¶ 23 (emphasis added). In other words, his back disability would not permit him to sit or stand "for a prolonged period of time." *See id.*

Around February 2020, or after at least four months of solo patrol, a fellow veteran introduced Plaintiff to the idea of obtaining a service dog through a Veterans

---

[3] The FAC alleges that in these reviews, the only possible overall ratings a trainee can receive are acceptable or unacceptable. FAC at 6, ¶ 19. Thus, Plaintiff pleads that by receiving this review, he received the highest review possible. *See id.*

Administration ("VA") affiliated program.  FAC at 8, ¶ 24.  Plaintiff alleges that this individual informed Plaintiff that a service dog "might help with certain activities that are made painful and more difficult as a result of his back condition,[4] along with potentially providing other assistance with Plaintiff's military service-connected disabilities."  *Id.*  Plaintiff also spoke with an instructor at the service animal training facility who informed him that other police officers had received service dogs through the program; however, the dog would be required to go to work with its handler (*i.e.*, Plaintiff).  *Id.*  At the time, Plaintiff knew that ECPD "police officers are not permitted to bring non-police canines with them on calls for service, and doing so would inhibit him from performing certain essential functions of his job." *Id.* at 8, ¶ 26.  Accordingly, he "assumed the dog would not ride in his police cruiser while on patrol," but he suggested "leaving the dog in a kennel at the station while Plaintiff was on patrol." *Id.* at 8-9, ¶ 26.

Later that same month, Plaintiff asked Sergeant Seaman about the possibility of agreeing to a reasonable accommodation that would allow him to bring a service dog to work.  FAC at 7, ¶ 27.  He also informed Sergeant Seaman that he could not be accepted to the VA-affiliated program unless he had a place to house the dog at the station while he was on patrol.  *Id.*  In that vein, Plaintiff asked Sergeant Seaman if he could keep the dog in the department kennel while he performed his patrol duties.  *Id.*  Sergeant Seaman informed Plaintiff he would pass the request up the chain of command.  *Id.* 9, ¶ 28.

On or about March 16th or 17th, 2020, Commander Ray Bonillas ("Commander Bonillas") requested information from Plaintiff regarding his request for an accommodation in the form of a service dog.  FAC at 8, ¶ 28.  He asked Plaintiff "what it [the dog] would be used for, what was Plaintiff's disability, and what was Plaintiff's 'percentage' (presumably, referring to his VA disability rating[5])."  *Id.*  Plaintiff answered

---

[4]     Although Plaintiff pleads that this individual told Plaintiff how a service dog could help his back disability, he does not plead what he was told (e.g., the ways that the service dog could help his back).

[5]     As context, the Secretary of Defense can retire a member of the armed forces where the member has a disability rating of "at least 30 percent under the standard schedule of

the questions.  FAC at 8, ¶ 28.  Plaintiff pleads that while responding to this inquiry from Commander Bonillas, Plaintiff also informed Commander Bonillas "that it [his back disability] caused him significant pain, and it prevented him from sitting, standing, or lying down for extended periods of time."  *Id.*  In other words, after requesting his accommodation, Plaintiff told Commander Bonillas that his back disability preventing him from performing what he alleges were two of his essential job functions: sitting and standing for extended periods of time.  *Id.* at 7, ¶ 23, 9, ¶ 28.

On March 18, 2020, Commander Bonillas sent Plaintiff an e-mail, advising he had forwarded Plaintiff's request through the chain of command but needed additional information to consider the request.  FAC at 10, ¶ 29.  He asked Plaintiff to provide two items "at his earliest convenience," which included: (1) "any flyer, email, or other correspondence that outlines the use of the animal and the reason for the animals [sic] usage from the company or organization that is offering the animal" and (2) "a memo or an email response has [sic] to how the animal will benefit you."  *Id.*  Plaintiff alleges that the chain of command referenced by Commander Bonillas ends with Chief Johnson.  *Id.* at 10, ¶ 30.

On March 30, 2020, or almost two weeks later, Plaintiff replied to the e-mail, advising that he would gather the requested information, but the company providing the service animal had not agreed to work with him until he could guarantee the company that the ECPD would work with him by allowing the animal.  FAC at 10, ¶ 30.  Although this e-mail addressed the first item requested (*i.e.*, a writing from the company) by advising he

---

rating disabilities in use by the Department of Veterans Affairs at the time of the determination," and "the disability is the proximate result of performing active duty."  10 U.S.C. § 1201(b).  The VA's Schedule for Rating Disabilities ("VASRD") contains lists of codes that correspond to specific disabilities, and each code links to a disability rating and includes instructions on determining which rating applies in a particular case.  *See, e.g.*, 38 C.F.R. § 4.71a (the schedule of ratings for musculoskeletal disabilities).  Other aspects of a member's disability, such as functional loss and age, are also considered.  *See id.* § 4.40.  Any reasonable doubt as to the rating of a disability must be resolved in the member's favor.  *Id.* §§ 3.102, 4.3.  "The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations."  *Id.*

did not have the information, it neglected addressing the second request regarding information as to how the animal would benefit him. *See id.*

On March 31, 2020, or the next day, Plaintiff received another positive performance review, indicating he continued to work at an acceptable level. FAC at 7, ¶ 21.

On April 6, 2020, at approximately 7:00 p.m., or roughly a week after Plaintiff's response to Commander Bonillas and positive performance review, Commander Bonillas asked to see Plaintiff in his office. FAC at 10, ¶ 31. At the beginning of this meeting, Commander Bonillas said, "I don't know what I'm doing, I've never done this [terminated someone] before, I'm just going to read the letter chief wrote." *Id.* Then, he read Plaintiff a memorandum from Chief Johnson terminating Plaintiff's employment. *Id.* at 10-11, ¶¶ 31-32. This letter was titled "RELEASE FROM PROBATIONARY POLICE OFFICER POSITION" and advised that the ECPD had "determined that [Plaintiff did] not meet the standards of the El Centro Police Department." *Id.* at 11, ¶ 32. Plaintiff pleads that he asked Commander Bonillas why he was being terminated three times, and each time, Commander Bonillas responded by stating, "I don't know." *Id.* Plaintiff alleges that the same day he was terminated, multiple members of the ECPD command staff were discussing his service animal housing request. *Id.* at 10, ¶ 32.

On April 7, 2020, Plaintiff contacted human resources to inquire about his final paycheck but was told it was not ready. FAC at 12, ¶ 34.

On April 13, 2020, Plaintiff's attorney had a meeting to discuss Plaintiff's sudden termination with the head of human resources and Chief Johnson, but this meeting was abruptly cancelled that morning. FAC at 12, ¶ 35. Plaintiff alleges the ECPD told his attorney that it "was unilaterally altering the release memorandum by removing the language stating Plaintiff failed to meet standards, leaving instead only a statement that Plaintiff was being released from probation absent any indication as to why." *Id.*

Plaintiff pleads that Defendants terminated him in substantial part based on his disability, military/veteran status, and request for a reasonable accommodation in the form of a service animal. FAC at 12, ¶ 36. Plaintiff alleges that with respect to his military

service, Defendants (1) "assumed the service animal was intended to at least in part assist Plaintiff in coping with Post Traumatic Stress Disorder, or a different service connect [sic] psychological condition," (2) "acted upon a discriminatory association between military service and psychological fragility or unfitness, in violation of USERRA," (3) held Plaintiff "to a different standard than non-veteran officers," and (4) terminated Plaintiff "at least in substantial part on the discriminatory assumption that Plaintiff, as a veteran, was more prone to being … psychologically damaged." *Id.* at 13, ¶ 37.

## B.   Procedural History

On August 13, 2020, Plaintiff filed his complaint against Defendants alleging claims for relief[6] for violations of (1) USERRA's prohibitions against discrimination based on military or veteran status; (2) FEHA's prohibition against military/veteran status discrimination; (3) FEHA's prohibition against disability discrimination; (4) FEHA's prohibition against retaliation for requesting reasonable accommodation; (5) FEHA's prohibition against failing to provide reasonable accommodation; (6) FEHA's prohibition against failing to engage in good faith interactive process; and (7) FEHA's prohibition against failing to prevent discrimination and/or retaliation. *See generally* ECF No. 1.

On October 23, 2020, Defendant City of El Centro filed a Motion to Dismiss the Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). ECF No. 6. On November 4, 2020, Defendant Brian Johnson also filed an identical motion to that filed by the City. ECF No. 9. However, on November 9, 2020, Plaintiff filed his FAC, alleging the same claims for relief that Defendants sought to dismiss but adding additional allegations. *See* FAC. Plaintiff also filed a Statement of

---

[6]   Plaintiff's FAC and both parties' briefs use the term "cause of action." This Court will refer to Plaintiff's "causes of action" as "claims for relief." *See, e.g.*, *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264-70, n. 2 (9th Cir. 2006) (providing that "[a] 'cause of action' under California law is equivalent to a 'claim' under federal law, although the California system is based upon the old code pleading system, . . . [u]nder the federal system, 'the word "claim" denotes the allegations that give rise to an enforceable right to relief'"); *see also* Fed. R. Civ. P. 8 (requiring a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief").

1   Non-Opposition to Defendant's Motion to Dismiss the Complaint Due to the Filing of the

2   First Amended Complaint.  ECF No. 11.  Accordingly, on November 18, 2020, this Court

3   issued an order denying Defendants' Motions to Dismiss as moot.  ECF No. 13.

4       On November 30, 2020, Defendants filed a Motion to Dismiss the FAC for Failure

5   to State a Claim.  Motion, ECF No. 14 ("Mot.").  On December 23, 2020, Plaintiff opposed.

6   Opposition, ECF No. 15 ("Oppo.").  On December 31, 2020, Defendants filed a reply brief.

7   Reply, ECF No. 16 ("Reply").

8   ## III.   LEGAL STANDARD

9       Under Rule 12(b)(6), a complaint must be dismissed when a plaintiff's allegations

10  fail to set forth a set of facts which, if true, would entitle the complainant to relief.  *Bell*

11  *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 679 (holding that a

12  claim must be facially plausible to survive a motion to dismiss).  The pleadings must raise

13  the right to relief beyond the speculative level; a plaintiff must provide "more than labels

14  and conclusions, and a formulaic recitation of the elements of a cause of action will not

15  do." *Twombly*, 550 U.S. at 555.  On a motion to dismiss, a court accepts as true a plaintiff's

16  well-pleaded factual allegations and construes all factual inferences in the light most

17  favorable to the plaintiff.  *Manzarek*, 519 F.3d at 1031.  A court is not required to accept

18  as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678.

19      When a motion to dismiss is granted, the court must decide whether to grant leave

20  to amend.  The Ninth Circuit has a liberal policy favoring amendments, and thus, leave to

21  amend should be freely granted.  *DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658

22  (9th Cir. 1992).  However, a court need not grant leave to amend when permitting a plaintiff

23  to amend would be an exercise in futility.  *Rutman Wine Co. v. E. & J. Gallo Winery*, 829

24  F.2d 729, 738 (9th Cir. 1987).

25  ## IV.   DISCUSSION

26      Defendants argue that it is not plausible that the City "(1) hired Plaintiff with full

27  knowledge of his military and disability status; (2) put Plaintiff through a 17-week [FTO]

28  program, allowed Plaintiff to graduate early from the FTO program, gave Plaintiff a solo

-8-

patrol assignment with a City police cruiser, badge and gun, gave Plaintiff favorable evaluations through his 10 months of employment; and then (3) terminated plaintiff because of his military and disability status." Mot. at 8:13-19. According to Defendants, if the City was going to discriminate against Plaintiff on the basis of either his military service or disability, it would have done so before investing in Plaintiff's pre-employment evaluation, training Plaintiff extensively (both in the police academy, and FTO program), and sending Plaintiff out with a badge and gun to patrol the City by himself. *Id.* at 8:19-23. According to Defendants, while the FAC "does not plausibly state a claim under the USERRA or FEHA," it "does allege facts that plausibly support the conclusion that Plaintiff was properly released from probation." *Id.* at 9:22-24. Defendants point out that "[d]ue to the enormous responsibilities and risks involved in the job of being a police officer, California law imposes particular standards to qualify for employment as a peace officers," which include particular pre-employment qualifications a candidate must meet to qualify for employment. *Id.* at 9:24-28. One of those pre-employment requirements is that candidates provide a medical history statement disclosing all past and current medical conditions, but Plaintiff's "FAC plausibly supports a conclusion that Plaintiff withheld pertinent information during the job application process" for three reasons. *Id.* at 10:1-5.

First, in the FAC, Plaintiff pleads that he "is ***informed*** and ***believes***, therefore, that he has a record or history of mental/psychological and physical disorders or conditions, as described above, which were known to Defendant from the outset of the hiring process." FAC at 5, ¶ 16. Defendants point out that first, Plaintiff should know whether he did or did not disclose his medical conditions, and as such, should not need to make such allegations "on information and belief." Mot. at 10:5-9. Indeed, one of many critical problems with Plaintiff's FAC is that it makes allegations on information and belief, such as whether he has a history of disabling conditions, FAC at 5, ¶ 16, which should be within Plaintiff's knowledge. A plaintiff need not allege facts "peculiarly within the opposing party's knowledge" and may make such allegations "based on information and belief," but only where "the allegations are accompanied by a statement of facts upon which the belief

-9-

is founded." *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 493-94 (9th Cir. 2019).   However, where the facts are within the pleader's knowledge, pleading on information and belief is not proper.  *Id.*  Here, both whether Plaintiff has a history of medical conditions and whether he disclosed those conditions are well within Plaintiff's knowledge and should not have been alleged on information and belief.   That these allegations were pled on information and belief raises questions of whether they were, in fact, disclosed, especially when viewed in light of his other allegations.

Second, Defendants argue that if Plaintiff truthfully disclosed his disabilities when applying for his position, it does not follow that when he asked for a reasonable accommodation (more than eight months after he performed his job with no such accommodation), his supervisor would ask Plaintiff what his disability was.  Mot. at 10:9-16 (citing FAC at ¶¶ 13, 14, 24, 28, 29); *see also* FAC at 9, ¶ 28.  Indeed, if Plaintiff had disclosed his full medical history of conditions, which would have included his VA disability rating, it seems implausible Plaintiff's supervisor would need to ask Plaintiff what his physical disability was.  Conversely, in a job that requires its officers—both before applying and while maintaining the job—to "[b]e found to be free from any physical . . . or mental condition . . . that might adversely affect the exercise of the powers of a peace officer," *see* CAL. GOV'T. CODE § 1031(f), if Plaintiff had a such a condition, as he pleads he did, it is plausible that his supervisors would have known of the disability either personally or as documented in his record.  *See, e.g.*, Cal. Code Regs. tit. 11, § 1954(d)(2) (requiring applicants for a peace officer position to provide a full medical history).

Third, Defendants argue that if Plaintiff truthfully disclosed during his application processes, as he alleges he did, "that Plaintiff's back pain is so severe that it limits his performance of two of the least onerous essential functions of the peace officer job, sitting and standing for extended periods," then, he "could not have been hired as peace officer because he could not have been 'found to be free from any physical . . . condition that might adversely affect the exercise of the powers of a peace officer."  Mot. at 10:16-22 (citing FAC at ¶¶ 23, 28); *see also* CAL. GOV. CODE, § 1031(f).

-10-

Plaintiff's Opposition Brief largely recites the allegations in his FAC, cites the relevant law, and conclusorily argues that his allegations plead sufficient facts to state a claim under the relevant law. *See generally* Oppo. The bulk of his non-conclusory arguments focus on his USERRA claim and disability discrimination claim. *Id.* However, the case law Plaintiff cites cannot save him from his own allegations, which are devoid of any facts plausibly indicating discrimination on the basis of his military or veteran status and suggest he was not entitled to the reasonable accommodation he sought. For instance, Plaintiff argues that "[p]ermitting Plaintiff to use the department kennel for a service animal trained to assist Plaintiff with major life activities would aid Plaintiff in performing the essential functions of his position because, among other things, Plaintiff could not perform all of those essential functions with the service dog by his side." Oppo. at 8:25-28 (citing FAC, at 8, ¶ 26). This argument is nonsensical: Plaintiff argues that a reasonable accommodation in the form of allowing him to leave his dog at the station while he is on patrol would help him perform the essential functions of his job (without the dog). Plaintiff's allegations are neither plausible nor cognizable under the law.

In reply, Defendants argue that "it [is] evident that Plaintiff has opted to withhold, qualify as 'information and belief,' and/or equivocate about facts clearly within his personal knowledge that would be natural to allege directly, unless those facts are detrimental." Reply at 11:17-20. They argue that "[t]he FAC is not logical or plausible, and Plaintiff has not indicated how he could allege a plausible claim," so the Court should dismiss all of Plaintiff's claims *with prejudice*. *Id.* at 11:20-23.

The USERRA aims to (1) "encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian . . . employment which can result from such service" and (2) "prohibit discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301(a). Meanwhile, California's FEHA prohibits employers from discriminating or retaliating against employees based on a protected status, which includes "physical disability, mental disability, medical condition, . . . or veteran or military status." CAL. GOV. CODE § 12940(a). However, the FEHA

-11-

explicitly excludes from unlawful behavior where an employer discharges "an employee with a physical or mental disability" if he or she, because of that "disability, is unable to perform the employee's essential duties even with reasonable accommodations." *Id.*

Defendants argue each claim for relief in Plaintiff's FAC fails to state a plausible claim for relief under either the USERRA or FEHA, and as such, should be dismissed under Rule 12(b)(6). Mot. at 8:10-12. The Court agrees. Plaintiff's FAC fails to plead sufficient facts to allow the Court to plausibly infer Defendants' decision to terminate Plaintiff was motivated by his military or veteran status in any respect. Rather, the FAC pleads facts that more plausibly suggest Defendants had a valid reason for terminating Plaintiff: By his own admission, he could not perform the essential functions of his job without reasonable accommodation. Further, it is not plausible to believe the reasonable accommodation he sought (a service animal) would have allowed him to perform his essential job functions given Plaintiff readily admits he could not bring a service dog with him while he performed his patrol duties. Most importantly, his USERRA claims are barred under the law.

For the reasons outlined below, the Court dismisses Plaintiff's First Claim for Relief *with prejudice*. With all federal claims dismissed, the Court declines supplemental jurisdiction over the related state law claims and dismisses those claims *without prejudice*.

## A. First Claim for Relief for Retaliation/Discrimination Under the USERRA

The USERRA authorizes two types of actions, covering both claims for (1) failure to reemploy pursuant to 38 U.S.C. § 4312 ("Section 4312"), which do not require proof of intent, and (2) intentional discrimination or retaliation under 38 U.S.C § 4311 ("Section 4311"), which applies both to initial employment and reemployment, and require proof of intent. *See, e.g.*, *Huhmann v. Fed. Express Corp.*, 874 F.3d 1102, 1105 (9th Cir. 2017) (outlining standard for USERRA discrimination claims); *Wallace v. City of San Diego*, 479 F.3d 616, 624-25 n. 1 (9th Cir. 2007) (outlining standard for USERRA retaliation claims).

Plaintiff's First Claim for Relief alleges (1) discrimination based on armed or military service in violation of Section 4311(a) and (2) retaliation for engaging in a

-12-

protected activity in violation of Section 4311(b).  FAC at 14, ¶¶ 40-42.  Section 4311(a), pertaining to both initial employment and reemployment, prohibits an employer from denying any person, who has performed service in a uniformed service, "initial employment, reemployment, retention in employment, promotion, or any benefit of employment" on the basis of his or her service.  *See also* FAC at 14, ¶ 41 (citing 38 U.S.C. § 4311(a)); *see also* 20 C.F.R. § 1002.18.  Section 4311(b), pertaining to retaliation claims, prohibits an employer from taking any adverse employment action against any individual because he or she has (1) "taken an action to enforce a protection" or (2) "exercised a right provided for" under the USERRA.

"The first step in a USERRA discrimination or retaliation claim requires courts to determine whether the employee suffered an adverse employment action."  *Espinoza v. City of Seattle*, 458 F. Supp. 3d 1254, 1259 (W.D. Wash. 2020), *appeal dismissed,* No. 20-35506, 2020 WL 7062684 (9th Cir. Sept. 15, 2020).  Here, the First Claim for Relief pleads that "Defendants, in violation of the USERRA anti-retaliation and anti-discrimination provisions (38 U.S.C. § 4311), retaliated and discriminated against Plaintiff because of his military/veteran status; specifically, Defendants terminated Plaintiff during his probationary period."  FAC at 15, ¶ 46.  This pleads sufficient facts to establish adverse employment action (although not necessarily in violation of the USERRA).

If the employee suffered an adverse employment action, a claim of discrimination under USERRA proceeds under a two-step burden-shifting approach: First, the plaintiff must show that the employer's decision to discriminate or retaliate against the individual, resulting in the adverse employment action, was motivated by either by (1) membership in a uniformed service and/or (2) exercise of a right provided for by the USERRA. 20 C.F.R. §§ 1002.22, 1002.23(a); *see also Huhmann*, 874 F.3d at 1108; 38 U.S.C. § 4311(c)(1)-(2). Second, and only where the plaintiff met the first burden, "the employer may avoid liability only by putting forward an affirmative defense that it would have taken the same action without regard to the military service."  *Huhmann*, 874 F.3d at 1108; *Wallace*, 479 F.3d at 624; 20 C.F.R. §§ 1002.22, 1002.23(b).

Here, Plaintiff's USERRA case, pled as both a discrimination and retaliation claim, fails for four primary reasons: First, the USERRA does not require reasonable accommodation in cases alleging discrimination where the suit involves initial employment as opposed to reemployment.  In that vein, to advance a retaliation claim, Plaintiff must plead facts suggesting he engaged in a protected activity.  Here, he alleges retaliation due to his request for a reasonable accommodation, but because the USERRA did not entitle him to a reasonable accommodation, his request was not a protected activity.  Second, the USERRA does not authorize cases for discrimination due to a real or perceived service-connected disability.  Third, Plaintiff has failed to plead sufficient, non-conclusory facts to allow the Court to plausibly infer Defendants had a discriminatory motive.  Fourth, even if Plaintiff had pled facts sufficient to allow the Court to plausibly infer Defendants considered his military status (he has not), his own allegations also plausibly support an inference that Defendants had valid grounds for terminating him.

## 1.   *The USERRA Does Not Require Reasonable Accommodation*

Although the term "retaliation" is not used in the USERRA, the gravamen of Section 4311 is to prohibit adverse employment action in retaliation for the exercise of rights under the USERRA. *Wallace,* 479 F.3d at 625, n.1. Therefore, "a retaliation claim requires an additional threshold showing that the employee exercised his or her USERRA rights," but other than that, "the burden-shifting framework for discrimination and retaliation claims under USERRA is identical." *Espinoza*, 458 F. Supp. 3d at 1259 (citing *Wallace*, 479 F.3d at 624; *Huhmann*, 874 F.3d at 1105).  Protected activity includes (1) taking "an action to enforce a protection afforded any person" under the USERRA, (2) testifying or otherwise making "a statement in or in connection with any proceeding" pertaining to the USERRA, (3) assisting or otherwise participating in an investigation under the USERRA, or (4) exercising a right provided for under the USERRA.  38 U.S.C. § 4311(b).

In this case, Plaintiff's FAC never alleges he engaged in a protected activity under the USERRA.  It has no allegations showing that, as relates to the USERRA, he (1) took action to enforce a protection, (2) testified or made a statement in a proceeding, (3) assisted

or otherwise participated in an investigation, or (4) exercised a right provided for by the statute. *See generally* FAC. Plaintiff argues he engaged in a protected activity by requesting "requested 'modification or adjustment' in the form of permission to bring a service animal to work and house it in the Department kennel while he was on patrol." Oppo. at 21:4-6. As outlined below, this is not a USERRA protected activity.

Plaintiff's request for a reasonable accommodation does not qualify as a protected activity because the USERRA does not entitle those who fall under its protection to reasonable accommodations in cases that do not involve reemployment. *See, e.g.*, *Sandoval v. City of Chicago, Illinois*, 560 F.3d 703, 704-05 (7th Cir. 2009) ("Section 4311(a) . . . "does not require accommodation"); *Felton v. City of Jackson, Mississippi*, No. 3:18CV74TSL-RHW, 2018 WL 2994363, at *4 (S.D. Miss. Jun. 14, 2018) (holding the "plaintiff cannot state a cognizable USERRA discrimination claim for failure to accommodate his alleged service-connected disability [PTSD]" because "Section 4311 'does not require accommodation, which is fundamentally different from an equal-treatment norm'"). In sum, the USERRA does not require reasonable accommodation in cases alleging discrimination or retaliation where the suit involves initial employment as opposed to reemployment. *McConnell v. Anixter, Inc.*, No. 4:17-CV-3010, 2017 WL 11478712, at *3 (D. Neb. Oct. 11, 2017. This is because in enacting the USERRA, Congress intended "a reemployed veteran who, upon returning from military service, satisfactorily completes his interrupted training, to enjoy the seniority status which he would have acquired by virtue of continued employment but for his absence in military service." *Huhmann*, 874 F.3d at 1110. In other words, the purpose of the USERRA is to protect the jobs of returning veterans. *See id.*

This point is illustrated by the *McConnell* case: In *McConnell v. Anixter, Inc.*, the plaintiff-veteran alleged that he was a member of the uniformed services for almost nine years, after which he worked for the defendant for approximately two years. 2017 WL 11478712 at *1. He alleged that as a result of his service, he sustained various injuries, including PTSD, and as a result of his injuries, could not lift more than 40 pounds. *Id.*

-15-

However, like Plaintiff, he alleged his employer knew of his status as a disabled veteran and violated the USERRA, *inter alia*, by "refusing to accommodation his request for a service animal." 2017 WL 11478712 at *2.

In dismissing the plaintiff's USERRA claims, the *McConnell* court noted that while "§ 4311 prohibits discrimination based on military service with respect to 'any benefit of employment,' . . . "[t]he reemployment provisions that follow . . . provide additional protection to service members who seek to return to a particular employer after having left for military service." 2017 WL 11478712 at *2. The problem with the *McConnell* plaintiff's complaint was that "any mention of reasonable efforts to accommodate a service-related disability is found in the language of § 4313—a provision protecting the 'reemployment' of a veteran by his former employer." *Id.* at *3. Thus, in order for him "to demonstrate he was entitled to a reasonable accommodation, he must show that he satisfied the reemployment prerequisites set forth in § 4312." *Id.* In the *McConnell* complaint, however, there was nothing to suggest he was employed by the defendant ***before*** his service. 2017 WL 11478712 at *3. Instead, the plaintiff relied "on the general contention that Anixter 'is a covered employer under USERRA' and Anixter was aware McConnell was 'a veteran and that he had two service related disabilities.'" *Id.*; *compare* FAC at 15, ¶ 45 ("Each Defendant, at all times material herein was an 'employer' as defined by C.F.R. 1002.5(d)(1)"), ¶ 44 ("Plaintiff's military service and veteran status, and/or disabled veteran status, were motivating factors in Defendants' termination of Plaintiff"). Accordingly, the court held "an employer is only obligated to provide a reasonable accommodation for a veteran's service-related disability if that veteran has been reemployed after a period of service pursuant to §§ 4312 and 4313." 2017 WL 11478712 at *3. Because the plaintiff "failed to plead any facts demonstrating that he met the conditions set forth in § 4312," the court dismissed his USERRA claim that his employer failed to reasonably accommodate his service-related disability. *Id.*

Like the *McConnell* court, this Court notes that the only mention of a requirement for a reasonable accommodation is in Section 4312 and Section 1002.225 of the Code of

Federal Regulations.  *See* 20 C.F.R. §§ 1002.225 ("If the employee has a disability incurred in, or aggravated during, the period of service in the uniformed services, the employer must make reasonable efforts to accommodate that disability and to help the employee become qualified to perform the duties of his or her **reemployment position**.") (emphasis added). However, Plaintiff's First Claim for Relief is pled entirely under Section 4311.  *See* FAC at 14-15.  Further, the FAC also alleges that (1) his time with the marines lasted from June 2012 "until in or about July 2019," FAC at 4, ¶ 12; (2) "[w]hile still a member of the inactive reserves, Plaintiff joined the police academy," *id.* at 5, ¶ 15; and (3) "[i]n or about June 2019, shortly after finishing the police academy, Plaintiff was hired by Defendant City as a police officer."  *Id.* at 5, ¶ 16.  These facts suggest Plaintiff may have still been a member of the reserves at the time Defendants hired him.  *But see* FAC at 4, ¶ 12 (alleging that "*[p]rior to his employment at El Centro*, he was a member of the United States Marine Corps").  However, as in *McConnell*, even if Plaintiff's FAC suggests a one month (at most) overlap between his employment with Defendants and time in the reserves, it never pleads any facts (1) suggesting after he was hired by Defendants, he performed any reserve duty and/or (2) during the reserve duty he may or may not have performed *while* employed by Defendants, he sustained an injury that Defendants failed to accommodate.  In other words, even if the re-employment provisions apply, they only require accommodation by the employer who employed the veteran *at the time* the veteran sustained the service-connected disabilities.  Here, Plaintiff clearly pleads he sustained his injuries in 2015 and 2016, FAC at 4, ¶¶ 13-14, well before he worked for Defendants.  Thus, separate and aside from not having met the other requirements for pleading a reemployment claim,[7] as outlined in *McConnell*, his injuries would not entitle him to relief.  In sum, similar to the

---

[7]     *Compare* 38 U.S.C. § 4312(c) (providing that except for certain situations, the reemployment provisions "apply to a person who is absent from a position of employment by reason of service in the uniformed services if such person's cumulative period of service . . . with respect to the employer relationship for which a person seeks reemployment, does not exceed five years") *with* FAC at 4, ¶ 12 (pleading Plaintiff served from June 2012 through July 2019, or seven years).

federal Americans with Disabilities Act ("ADA"), an employer may be required to grant the request of an employee—previously employed and returning from service—to bring a service animal to the workplace as a reasonable accommodation under the USERRA unless the employer can demonstrate the accommodation creates an undue hardship.  38 U.S.C. §§ 4303(10).  However, as noted by the plain text of the USERRA, the right to reasonable accommodation only arises in cases addressing reemployment, not cases pertaining to initial employment.  As pled, those provisions do not apply to Plaintiff's FAC.

In *Felton*, the court dismissed similar claims *with prejudice*.  2018 WL 2994363, at *4.  It reasoned that the veteran-plaintiff's attempt to allege a claim for discrimination in violation of the USERRA failed because "plaintiff does not allege or even intimate that defendants discriminated against him because of his prior military service."  *Id.*  Instead, he alleged "that defendants discriminated against him on account of a disability, PTSD, which he alleges was contributed to by his military service."  *Id.*  Like the *Felton* plaintiff, whose claim arose out of a refusal to accommodate his disability rather than his military service, 2018 WL 2994363, at *4, Plaintiff's claim also arises out of an alleged failure to accommodate his disability rather than his military service.  Thus, this Court also dismisses Plaintiff's claims for retaliation under the USERRA *with prejudice* as such claims are not cognizable under the USERRA.  *See, e.g.*, *Durr v. Merit Sys. Prot. Bd.*, No. 2020-2131, 2021 WL 347011, at *1-2, n.2 (Fed. Cir. Feb. 2, 2021) (holding the "allegations of disability discrimination . . . cannot be considered in the context of a USERRA complaint, which is limited to adjudication of discrimination claims based on military status").

### 2.     *The USERRA Does Not Authorize Cases Arising Out of Discrimination for Service-Connected Disabilities*

"[A] USERRA plaintiff has the initial burden of demonstrating that his military *service*, as distinct from a *disability* resulting from service, was a substantial or motivating factor in the employer's decision."  *Carroll v. Delaware River Port Auth.*, 89 F. Supp. 3d 628, 633-35 (D.N.J. 2015) (denying summary judgment because "a reasonable juror could find that Defendant did not select Plaintiff for promotion because of his

-18-

absences connected to his service-related disability, which, this Court holds, is not actionable under USERRA") (original emphasis).  Defendants argue that even when crediting the FAC's allegations as plausible, the FAC alleges Defendants terminated Plaintiff "because of a military-related disability (or perception thereof), which is not a basis for relief under USERRA." Mot. at 22:9-11.  They point out that the "USERRA does not cover claims for retaliation or discrimination because of disabilities sustained by virtue of military service." *Id.* at 22:11-25 (citing, *inter alia*, *Cooks v. Contra Costa Cty.*, No. 20-CV-02695-PJH, 2020 WL 4539097, at *2-3 (N.D. Cal. Aug. 6, 2020) (dismissing the USERRA claim while noting that "[t]he court is skeptical that plaintiff could allege sufficient facts to state a claim under USERRA" where he alleged "he was terminated because of his disability, not because of his membership in uniformed services").

Plaintiff responds that Defendants fail to cite to any "Ninth Circuit Court of Appeal [sic] decisions and only one Ninth Circuit district court case (an unpublished Northern District case)" for the proposition that the USERRRA does not provide for claims for discrimination due to disabilities (or perceived disability) incurred as a result of military service.  Oppo. at 13:10-14.  He contends that "[c]ourts have drawn a distinction between USERRA claims based on discriminatory stereotyping of veterans as psychologically unfit, and those discrimination claims premised on a military service-connected disability." *Id.* at 13:16-18.  Ironically, however, to support this argument, Plaintiff relies only on a district court case from the Middle District of Louisiana: *Cain v. Exxon Mobil Corp.*, 400 F. Supp. 3d 514, 531-532 (M.D. La. 2019).

In reply, Defendants point out that "[w]hile it is true there is not much Ninth Circuit authority on the issue, . . . the scope of USERRA has been consistently applied for decades."  Reply at 1-11 (citing *McBride v. United States Postal Serv.*, 78 M.S.P.R. 411, 414-15 (M.S.P.B. 1998)).  They argue that the Court need not resort to case law because the plain text of the USERRA itself is clear and prohibits discrimination because on "past, current, or future military obligation" without addressing discrimination due to a service-connected disability. *Id.* at 9:12-18.  Thus, Defendants argue the Court should reject the

only case Plaintiff cites for the proposition that "[c]ourts have drawn a distinction between USERRA claims based on discriminatory stereotyping of veterans as psychologically unfit, and those discrimination claims premised on a military-service connected disability" as "judicial legislation that runs afoul of the Ninth Circuit's rules for statutory interpretation." *Id.* at 10:12-23. They also argue that *Cain* should be rejected as inapposite. *Id.* at 10:24-11:1. Given this is an issue of unsettled law potentially fatal to Plaintiff's remaining discriminatory theory, the Court addresses each argument in turn.

For his proposition that his claim may proceed, Plaintiff relies on *Cain v. Exxon Mobil Corp.*, where the plaintiff alleged that the defendant "discriminated against him by terminating him based on his 'past military service and perceived PTSD.'" 400 F. Supp. 3d at 526. The *Cain* complaint alleged that the plaintiff applied to a position with the defendant, disclosed his military experience, and was assigned to work under a trainer, David Mobile. *Id.* at 518 (citing the relevant paragraphs in the complaint). The plaintiff also pled that once it was disclosed that he served in the uniformed services, Mr. Mobile began treating him differently, including by: (1) circulating "the unsupported allegations that he suffered from PTSD," (2) telling co-workers that plaintiff "may freak out on the unit at any time," and (3) recording his thoughts and concerns about the plaintiff in notes, which reflected concerns that the plaintiff's PTSD drew a red flag for him. *Id.* The complaint also alleged that the defendant employer failed to provide him adequate training, which resulted in Mr. Mobile evaluating the plaintiff poorly and reporting that he was "behind in his training 'due to his past military service and perceived PTSD." *Id.* The plaintiff advanced the argument "that upon learning of his military service, Defendant associated PTSD with military service," and "this perception grew and became an alleged motivation to terminate his employment." *Id.* However, the *Cain* court denied the defendant's motion for summary judgment, finding a genuine issue of fact remained as to the USERRA claim. *Id.* at 536. The *Cain* case is distinguishable for several reasons.

First, in *Cain*, the plaintiff pled numerous factual allegations that plausibly allowed the Court to infer discriminatory animus on the basis of the plaintiff's service, such as

differential treatment and notes directly associating the plaintiff's service with poor performance. 400 F. Supp. 3d at 518. Here, on the other hand, the only factual allegations pertaining to Plaintiff's service are that Commander Bonillas asked Plaintiff about his VA disability rating. FAC at 9, ¶ 29. A mere question, without any suggestion of animus or negative association, pales in comparison to the allegations in *Cain*, where the supervisor told the plaintiff's co-workers that he had PTSD due to military service when he did not. 400 F. Supp. 3d at 518. Thus, the *Cain* complaint survived the defendant-employer's motion to dismiss the USERRA claim and proceeded to summary judgment. *Id.* at 519. However, in allowing the claim to proceed beyond summary judgment, the court recognized there was little in the way of legal support for allowing the USERRA claim:

> The Court finds that there is no rule that a purported discriminatory animus based on military service cannot be a factor to support a USERRA claim, **although there is little in the way of legal support for the argument**. Because the Court does not find sufficient support for the argument that Plaintiff does not have a viable claim under Section 4311 of USERRA,[8] the Court turns to the record evidence on summary judgment to determine whether there is evidentiary support that Plaintiff's military service was a motivating factor in Defendant's termination of his employment.

---

[8]     Section 4311, entitled "Discrimination Against Persons Who Serve in the Uniformed Services and Acts of Reprisal Prohibited," applies to discrimination in "the initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer" on the basis of service in the uniformed services. 38 U.S.C. § 4311(a). Section 4313, on the other hand, which according to its title only pertains to "Reemployment Positions," explicitly prohibits discrimination against an employee with "a disability incurred in … such service, and who (after reasonable efforts by the employer to accommodate the disability) is not qualified due to such disability … in the position of employment in which the person would have been employed if the continuous employment … had not been interrupted by such service." 38 U.S.C. § 4313(a)(3). Unlike the *Cain* court, this Court concludes that the plain text of the statute along with the fact that reasonable accommodation is only recognized for cases involving reemployment does, in fact, provide "sufficient support for the argument that Plaintiff does not have a viable claim under Section 4311." *See, e.g.*, *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004) (noting that when interpreting a statute, courts should look at the statute in the context of the entire statutory scheme within which it is contained).

*Id.* at 533 (citing 20 C.F.R. § 1002.22; *Bradberry v. Jefferson Cty., Tex.*, 732 F.3d 540, 545 (5th Cir. 2013) (reiterating that Section 4311 "concerns discrimination against those in the military when making employment decisions" while 38 U.S.C. § 4312 "protects the employment of those returning to their former civilian jobs after temporary military duty").

Second, *Cain* did not stand for a *per se* rule that claims under the USERRA arising out of a purported discriminatory animus based on a perceived or real disability incurred during military service are viable. 400 F. Supp. 3d at 533. Rather, *Cain* acknowledged the lack of support for the existence of such a claim, and instead, chose to examine whether, *assuming arguendo*, such a claim could go forward, the plaintiff could show a genuine issue of fact existed as to whether the defendant discriminated against him, in part, on the basis of his military service. *Id.*

Defendant argues that in *Cain*, the plaintiff alleged he had a perceived disability connected with his military status, whereas Plaintiff here alleges "he actually has service-connected disabilities." Reply at 11:1-10. However, Defendants fail to acknowledge the fact that in addition to allegations that Plaintiff actually has depressive disorder, FAC at 4, ¶ 14, he also alleges that Defendants perceived him as having PTSD, which he does not have, *id.* at 13, ¶ 37. Thus, that attempt to distinguish *Cain* fails. However, Defendants' other theory for distinguishing *Cain* is availing: The *Cain* plaintiff "advanced specific facts to support his theory," Reply at 11:11 (citing *Cain*, 400 F. Supp. 3d at 522-23, 532-34). Plaintiff, on the other hand, "has offered only conclusory allegations on information and belief without any basis for the information and belief." *Id.* at 11:12-15. Thus, although *Cain*, was based on initial employment (rather than reemployment), it is distinguishable because it involved allegations of statements by the employer perceiving the employee to have PTSD (when he did not) and opining he was a safety risk. *Id.* at 532. Here, beyond Plaintiff's conclusory allegations that he is informed and believes Defendants had a negative association between PTSD and military service, FAC at 13, ¶ 17, there are no factual allegations regarding statements made to or about him regarding whether he had PTSD, or whether that this belief arose out of his service history.

-22-

The Court agrees with Defendants that this case more closely resembles the more recent case from the Northern District of California, *Cooks v. Contra Costa County*, where the court granted the defendant's second motion to dismiss a claim for violation of the USERRA while also denying leave to amend on the basis of futility.  No. 20-CV-02695-PJH, 2020 WL 7025137, at *5 (N.D. Cal. Nov. 30, 2020) (*Cooks II*).  Not only does that case involve a motion to dismiss, like the one at issue in this case, but it also factually resembles this case as well.  The *Cooks* plaintiff was a veteran hired to work as an IT professional, and after being hired, was diagnosed with mental health issues.  *Id.* at *1.  When the plaintiff returned to work after being hospitalized, he shared his diagnosis with his supervisor, who he alleged began to treat him less favorably, ultimately resulting in his termination almost a year later.  *Id.*  Like Plaintiff here, the *Cooks* plaintiff alleged he had suffered discrimination because of his status as a veteran.  *Id.*

In the order on the first motion to dismiss the USERRA claim, the court noted that "while plaintiff alleges that he was previously a member of the uniformed services, he does not allege any facts connecting his uniformed service to defendant's termination decision." *Cooks v. Contra Costa Cty.*, No. 20-CV-02695-PJH, 2020 WL 4539097, at *2 (N.D. Cal. Aug. 6, 2020) (*Cooks I*).  Instead, he alleged his supervisor treated him less favorably because he had a disability, meaning his termination allegedly resulted from his disability rather than his membership in the armed services.  *Id.*  On that basis, the court concluded the plaintiff failed to state a claim and cautioned it was skeptical of whether "plaintiff could allege sufficient facts to state a claim under USERRA" at all.  *Id.*  In its later order on the second motion to dismiss the amended complaint, the court noted the plaintiff had failed to allege any new factual matter explaining "how defendant took any action towards plaintiff stemming from or relating to his status as a former member of the uniformed services." 2020 WL 7025137 at *5.  Likewise, Plaintiff's FAC is bereft of any allegations to that effect as well.  *See also Ferrell v. Ezpawn Oklahoma, Inc.*, No. CIV-18-607-SLP, 2019 WL 3207797, at *3, 7-8 (W.D. Okla. Jul. 16, 2019) (holding that the plaintiff's claim failed as a matter of law where the plaintiff alleged discrimination due to a disability he

-23-

suffered during service because "[s]uch alleged discrimination is not within the scope of USERRA's protections"). As in *Cooks* and *Ferrell*, Plaintiff pleads nothing more than conclusory facts that are not cognizable under the USERRA. *See, e.g.*, *Ladd v. City of W. Palm Beach*, 681 F. App'x 814, 816-18 (11th Cir. 2017) (dismissing the plaintiff's complaint alleging a violation of the USERRA because the City "regarded him as disabled due to a mistaken belief that he suffered a service connected disability (PTSD)" as it was "merely a conclusory statement supported by no reference to historic fact that would provide plausible support for a claim that the City's adverse employment actions were motivated, at least in part, by plaintiff's military service"); *accord Kieffer v. Planet Fitness of Adrian, LLC*, No. 17-CV-11307, 2017 WL 3581315, at *5 (E.D. Mich. Aug. 18, 2017). As the *Ferrell* court noted, "[t]he fact that a plaintiff's alleged disability began during his military service does not in itself implicate USERRA absent additional facts not pleaded by Plaintiff." 2019 WL 3207797 at *3 (internal quotations omitted).

Accordingly, this Court finds that the weight of authority does not recognize a claim under the USERRA arising out of alleged discrimination or retaliation due to a plaintiff's perceived or actual disability incurred during military service rather than arising out of the plaintiff's actual status as a current or former member of the uniformed services. To the extent *Cain* conflicts with this outcome, the Court disagrees with that decision.

Plaintiff plainly pleads that his allegations arose out of alleged discrimination due to Defendants' perception that he had PTSD as well as their failure to accommodate his request for a service animal. Even if Plaintiff had pled facts to suggest the final decisionmaker (*i.e.*, Chief Johnson) both perceived Plaintiff as having PTSD and factored that into his decision to terminate Plaintiff, Plaintiff's grounds for discrimination (*i.e.*, discrimination based on a perceived or real service-connected disability) are not cognizable under the USERRA, regardless of the factual allegations. Further, Plaintiff's alternative theory of retaliation due to his request for a reasonable accommodation is likewise simply implausible under the USERRA, regardless of the facts supporting the allegations. As such, the Court grants Defendants' Motion to Dismiss the First Claim for Relief for

-24-

violations of the USERRA *with prejudice*.  Having concluded that Plaintiff's claims are not cognizable under the law, regardless of the facts pled, the Court refrains from detailing how Plaintiff's factual allegations were insufficient in this case.

### B.   **Supplemental Jurisdiction**

"[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 (1988); *see also Acri v. Varian Assocs., Inc.,* 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) ("'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'").  Accordingly, this Court declines supplemental jurisdiction over Plaintiff's Second through Seventh Claims for relief arising under California's FEHA and dismisses those claims *without prejudice*.

## V.   **CONCLUSION**

For the above reasons, the Court rules as follows:

1.     Defendants' Motion to Dismiss is **GRANTED.**  Plaintiff's First Claim for Relief, alleging USERRA violations, fails to state a plausible claim for relief and is dismissed ***WITH PREJUDICE***.

2.     Because the First Claim for Relief is the only claim arising under federal law and has been dismissed, the Court exercises its discretion to decline supplemental jurisdiction over the remaining state law claims.  Claims Two Through Seven are dismissed ***WITHOUT PREJUDICE***.

3.     Defendant's Request for Judicial Notice is **DENIED**.

4.     The Clerk of the Court is directed to close the case.

DATED:   March 3, 2021

_____

**HON. ROGER T. BENITEZ**
United States District Judge